By the Court, Cgwen, J.
The middle letter was no part of the name; and was, therefore, properly rejected as surplusage, both in the pleadings and evidence. The name then stood in both William Milk. (Franklin v. Talmadge, 5 John. R. 84.) Again, the casé may be put in this way: William W. sues by the name of William H.; and the misnomer is not pleaded in abatement. It is then enough to see, that the true contract produced in evidence was in fact made with the real plaintiff, by whatever name. (Waterbury v. Mather, 16 Wendell, 611, 612 to 615, and the authorities there cited.)
Under the charge of the judge, the jury must be understood as having found that the wheat tendered was merchantable, within the sense of that word as understood by the plaintiff’s witnesses, at least; and if the construction of the statute, .contended for by the plaintiff’s counsel, be correct, we cannot interfere with the verdict. Whether the wheat ¡came within that construction, was a question fairly open for the jury upon the evidence, and was fairly submitted; and we must take it, on their finding, that the wheat was merchantable, unless the statute requires, upon such a .contract as the one before us, that merchantable wheat should combine, in each several bushel, both the measure and weight required - by the statute. The jury either repudiated this construction, thus, if the defendants *106 be right, finding against law; or they adopted it, and thus found against the weight of the evidence.
The defendants acted throughout upon a very narrow and inconvenient, not to say an unjust construction of the contract, obviously with the view to get rid of what turned out to be a hard bargain. Yet they are entitled to be discharged from the contract, if the statute be so strict as the learned judge supposed. The provisions to which he referred are 1 R. S. 618, § 19, and Id. 621, § 40, 2d ed. Section 19 declares, that “ The bushel shall contain at the mean pressure: of the atmosphere, at the level of the sea, eighty pounds of distilled water, at its maximum density.” Section 40, that “ Whenever wheat, rye or Indian coril, shall be sold by the bushel, and no special agreement as to the measurement or weight thereof shall be made by the parties, the bushel shall consist of sixty pounds of wheat, and of fifty-six pounds of rye or Indian corn.” The last section, standing alone, is ob • viously satisfied by mere weight. Wheat, otherwise merchantable, weighing sixty pounds, makes one bushel, and a great • er or less quantity makes bushels or parts of bushels, while rye and corn would be weighed, calling fifty-six pounds of either, one bushel. Such is the ordinary course among dealers. But it 'is supposed that the last section must be read with the previous, 19th; thus combining precise measure, as well as weight; in other words, that to make a bushel, it must not only be of the prescribed weight required by the 40th section, but must also precisely fill the measure required by the 19th. We think otherwise. The 19th section, the 14th, and others of a similar character, in the statute concerning weights and measures, (1 R. S. 616, 2d ed.) relate to the size or capacity of standard measures, deposited in the office of state. These are to be copied, distributed and authenticated, for the use of such as deal in measure simply. A contract expressing measure would, accordingly, mean the statute capacity; not weight. But the 40th section comes in and makes wheat, rye and corn exceptions. ' As to these, though the sale be expressed in bushels, a term for dry *107 measure, it shall be construed to mean weight simply. We are referred, by the defendants’ counsel, to the remarks of Professor Renwick, as adopted 'by the revisers. (3 R. 8. 545, 2d ed. pi. 4.) But nothing there said is calculated to raise the construction on the statute, for which the defendants contend. He is there treating of dry measure. His remarks regard capacity, not weight. No reference is made to the provision in the 40th section, by which the word bushel, in the peculiar case of wheat, rye and corn, is made prima facie a term of weight, and not of measure.
On the whole, we cannot bring ourselves to doubt, that the legislature intended, by the 40th section, simply to enact what had long been the universal practice of dealers, in the peculiar kind of grain there mentioned, under contracts of sale by the bushel. It was thought very inconvenient to make the word bushel, in contracts between them, conform to the general meaning affixed to it as a mere measure of capacity. The section was passed in affirmance, not in reversal of commercial language, as every merchant, probably every agriculturist, in the state, have long understood it. Both section 19, and the recommendation of Professor Renwick, standing in the form of an unqualified statute, would have departed from common parlance in respect to three kinds of grain. Section 40 introduced the proper qualification.
We are of opinion that the motion for a new trial must be denied.
New trial denied.